PATTERSON vs. MOORE AS AD.

A conveyance of real estate to the grantee, without the word heirs, or other words of inheritance, conveyed only a life estate, at common law, and under the territorial statute of 1804. *Steele & McCamp. Dig., Title Conveyance, sec.* 1.

And such deed does not operate to pass the fee by way of estoppel; because the grantor, in his deed, "doth warrant and defend from himself, his heirs, executors and assigns forever" the estate conveyed.

*Appeal from Independence Circuit Court in Chancery.*

Before Hon. B. H. NEELY, Circuit Judge.

PIKE & CUMMINS, and WM. BYERS, for appellant. We submit that the provision in the first section, title Conveyances, (*Steele & McCamp. Dig., p.* 131,) was designed to abolish the common law rule, requiring the term "heirs" to be used in a conveyance to constitute a fee.

The deed, besides any covenants that may be implied from the words of conveyance, contains an express covenant to *warrant* and *defend from himself, his heirs and assigns* FOREVER; which is an express covenant of warranty in fee and an estoppel against the grantor and those claiming under him. *Rawle on Cov.* 188, 196, 197; *Shaw vs. Galbraith,* 7 *Barr* 111; *Tenett et al. vs. Taylor et al.,* 3 *Cond. Rep.* 295; 5 *Cond. Rep.* 644; 3 *Pick.* 51.

FOWLER, contra. We insist that by the deed to Mrs. Moore there is no estate of inheritance "limited to the grantor and his heirs"—and, there being no words of limitation in and by the deed, either express or implied, it is not a case embraced within the statute of Louisiana territory, of October 1, 1804; but it is left to operate according to its terms as at common law. See *Geyer's Dig., p.* 127, *sec.* 1.

The entire want of any words of limitation to the grantor, &c., leaves it, dehors the statute; and, at common law, it could only pass a life estate to the grantee; as it contains no such words as heirs, inheritance, &c., which are indispensable to pass an estate in fee simple. 4 *Kent Com.* (3d *Ed.*) 5, 6, 7; 2 *Black. Com.* 107, 108; LITT., *sec.* 1; *Co. Litt.* 8, 6.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

This is an appeal from a portion of the decree in the case of Patterson vs. Dickinson et al., in which the opinion of the Court has just been delivered, affirming the decree upon the appeal of Ringgold, one of the defendants in the Court below. A reference to that opinion will serve to explain the character of the bill, and the nature of the relief sought, as against the present appellee, and the only question presented may be understood from the following further statement of the case.

Among the lands sold on executions against B. & T. Dickinson, and about which the appellant and appellee in that case were contesting, were two fractions, one of about 100 acres, and one of about 24 acres, the titles to which were thus derived. Thomas Moore, the owner in fee of the 100 acre fraction, on the 7th day of November, 1825, executed his deed as follows: "This indenture, &c., between Thomas Moore, of the county of Independence, and territory of Arkansas, and Mary Moore, of the same place, of the other part witnesseth: That the said Thomas Moore, for, and in consideration of, the sum of five hundred dollars, to him in hand paid, hath granted, bargained and sold, and by these presents doth grant, bargain, sell and convey to the aforesaid Mary Moore, so much of a certain tract of land (describing it) so as to contain one hundred acres of land, which aforesaid tract ot land for the stipulation above mentioned, the said Thomas Moore doth warrant and defend from himself, his heirs, executors and assigns forever." On the 18th of January, 1830, Mary Moore conveyed, to her son Robert and his heirs, all her right, title and interest in the same tract, reserving to herself the free use and

occupation of one undivided half of it, during her natural life. On the 13th of September, 1835, R. M. Saunders conveyed the fraction of 24 acres to Robert Moore in fee. On the 20th of February, 1837, Robert Moore sold both tracts to Benjamin Dickinson, with bond and covenant to make title to him and his heirs in fee, on payment of the purchase money, which is admitted to have been afterwards paid. On the 18th of July, 1838, Thomas Moore conveyed the entire tract originally entered by him, and including the 100 acres before mentioned, to Townsend Dickinson and his heirs.

Mary Moore having deceased, the chancellor, upon the final hearing, dismissed the bill, and denied the relief as against Wm. Moore, the administrator of Robert, who had died without executing a conveyance in compliance with his bond for title to Benjamin Dickinson. As to the 100 acre tract, the decision of the chancellor that Mary Moore, by the conveyance to her from Thomas, acquired only a life estate, was correct; and, as the bill was framed for title, without any alternative claim for compensation in damages, in the event of a failure or inability to complete it, the proper course was to dismiss the bill. Upon the question argued, it is proper to say, that since the adoption of the Revised Statutes of 1839, such a conveyance as that from Thomas to Mary Moore would pass a fee, the word heirs or other words of inheritance being dispensed with, so that if a less estate is intended, it must be expressly limited by appropriate words. It is believed the territorial statutes, in force at the time that deed was executed, did not make any change in the common law, in this particular. The act of 1804, (*Steele & McCamp. Dig., Title Conveyances, sec.* 1,) providing that all deeds, whereby any estate of inheritance in fee simple, shall hereafter be limited to the grantee and his heirs, the words *grant, bargain, sell,* shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit: that the grantor was seized," &c.; " and, also, for quiet enjoyment against the grantor, his heirs and assigns," &c., could only have been designed to abridge and simplify conveyances, by ma-

king the use of certain words import those covenants usually inserted at full length. It is argued for the appellant, however, that the deed to Mary Moore operates to pass the fee by way of estoppel, arising out of the special clause of warranty at the conclusion. In the principal case of *Shaw vs Gilbreath,* (7 *Pa. State Rep.* 111,) cited for the appellant to this point, the special clause of warranty was from the grantor and his heirs to the grantee, his heirs, and assigns. Here, whether from ignorance or design, the clause of warranty is only against the grantor and his heirs, and that being consistent with the granting part of the deed, which purports to convey only a life estate, could not be so construed as to enlarge it into a fee. The consequence is, that Townsend Dickinson having acquired the title to this tract by the conveyance to him from Thomas Moore in July, 1838, it became subject to the judgments rendered against him, and would follow the disposition of the other property in controversy between Ringgold and Patterson.

But the legal title to the fraction of 24 acres, was in the heirs of Robert Moore, and under the statute authorizing decrees against administrators to make conveyances in completion of sales made by their intestates, the prayer of the bill should have been sustained to that extent. As to so much of the decree in favor of the administrator, dismissing the bill, it will have to be reversed, and the cause will be remanded to the Court below, to modify its decree in accordance with the opinion here expressed. The administrator appears to have occupied a disinterested position, not objecting to execute such conveyance as the Court might direct, to either party, who might be entitled to receive it; and the judgment upon reversal in part of the decree here appealed from, will be that each party pay his own costs incurred about the prosecution of the appeal to this Court.